In the Matter of **PENN CENTRAL TRANSPORTATION COMPANY,** Debtor.

No. 70-347.

United States District Court, E. D. Pennsylvania.

Aug. 1, 1973.

Robert W. Blanchette, James E. Howard and Carl Helmetag, Philadelphia, Pa., for trustees, Penn Central Trans. Co.

Sullivan & Worcester by Morris Raker, Boston, Mass., and Gratz, Tate, Spiegel, Ervin & Ruthrauff by Spencer Ervin, Jr., Philadelphia, Pa., for Richard Joyce Smith, trustee, New York, New Haven & Hartford RR Co.

Davis, Polk & Wardwell by Richard M. Berman, New York City, for Morgan Guaranty Trust Co. of New York, as indenture trustee.

Proskauer, Rose, Goetz & Mendelsohn by Howard N. Lefkowitz, New York City, for the Bank of New York.

James F. Dausch, Dept. of Justice, for the United States.

Fox, Rothschild, O'Brien & Frankel by Nochem S. Winnet, Philadelphia, Pa., for First National City Bank of New York.

Morgan, Lewis & Bockius by Peter L. Koury, Philadelphia, Pa., for The Fidelity Bank.

## MEMORANDUM AND ORDER NO. 1288

FULLAM, District Judge.

The issue before the Court is whether the Trustees should be authorized to consummate a loan transaction, in the amount of $17,645,542 pursuant to the Emergency Rail Facilities Restoration Act (P.L. 92–591), upon the terms and conditions proposed by the Federal Railroad Administrator.

The Trustees were heretofore authorized, in Order No. 1232, to apply for such a loan, and were directed to report the terms and conditions which the Federal Railroad Administrator might have determined upon, pursuant to the statute. The Trustees have now reported the terms and conditions which have been negotiated, and seek authority to consummate the transaction. Objections have been interposed on behalf of various groups of secured creditors and other parties.

There are essentially two issues involved: (1) Whether it is in the best interests of the Debtor's estate and its reorganization to permit the creation of additional indebtedness in the amount set forth above; and (2) whether the terms and conditions of the proposed loan are satisfactory.

The overriding consideration at the present stage of this proceeding is that it is both necessary from the public standpoint, and desirable from the standpoint of parties to the reorganization, to insure that the Debtor is not forced to shut down its rail operations before October 1, 1973. Unless funds are obtained from some external source,

the Debtor will undoubtedly run out of cash before the end of August, 1973. In order to permit Congress adequate time for consideration of the various pending proposals looking toward solution of the problems of the northeastern railroads, and in order to provide a minimal period of time for the Interstate Commerce Commission to evaluate the various pending proposed reorganization plans, it is utterly necessary for the Trustees to find some money somewhere.

The more difficult problem is whether the terms and conditions of the proposed loan are acceptable. In the case of every bankrupt railroad except Penn Central, the Federal Railroad Administrator approved loans which would rank on a par with pre-bankruptcy unsecured obligations of the Debtor. In the case of Penn Central, however, the Federal Railroad Administrator has chosen to insist that the loan rank ahead of unsecured prebankruptcy creditors (but behind secured creditors). The stated reasons for imposing different conditions in the case of Penn Central than in the case of the other bankrupt railroads are, as I understand them: (1) The amount being loaned to the Debtor is greater than in the case of the other railroads; (2) There is a greater likelihood that Penn Central can successfully be reorganized on a private enterprise basis; and (3) In the other cases, the respective reorganization courts refused to permit consummation of the transaction except on a basis which would put the government claim on a par with unsecured pre-reorganization debt. It is a fair interpretation of the record that only the third reason could have had much persuasive force.

The size of the loan must be measured in relationship to the size of the enterprise to which the credit is being extended. In relationship to gross revenues, proximity to achieving net revenues, and asset values, both gross and net, it seems beyond dispute that a $4.2 million loan to the Lehigh Valley Railroad, for example, is significantly greater than a $17 million loan to the Debtor.

And it would further seem that a greater likelihood of successful reorganization (assumed by the Administrator) would be a reason for treating the Debtor more favorably, rather than less favorably, from the standpoint of relative priority.

The third factor, the actions taken by the respective reorganization courts, in reality confronts this Court with the issue of whether this Court can justify treating the Debtor differently from, for example, the Lehigh Valley. Indeed, it is apparent that the decision of the Administrator may have been based upon a misapprehension that this Court had indeed decided that the two Debtors could be treated differently. For various reasons, including the degree of opposition engendered, and the precise stage of the reorganization process, the preliminary orders entered in the two cases were different: In the Lehigh Vally case, the Trustees were initially precluded from applying for a loan, except upon condition that, if granted, the government's claim would rank on a par with pre-bankruptcy unsecured debt. In the case of Penn Central, the Trustees were authorized to apply, and to report back to this Court the terms and conditions upon which the loan might be achieved. Unfortunately, this method of handling the two transactions, which was adopted primarily to ensure that all of the various objecting parties in the Penn Central reorganization would have an opportunity to know the precise terms of the loan involved, may have given rise to the assumption that the Court was prepared to authorize different treatment of the government's claims in the two reorganizations.

For the reasons outlined above, I can find no rational basis for a holding which would have the effect of requiring, for example, pre-bankruptcy personal injury claimants of the Penn Central to be deferred until the Agnes loan is repaid, while permitting pre-bankruptcy personal injury claimants of the Lehigh Valley to rank equally with the government's Agnes claim.

I recognize that the Penn Central Trustees' initial application was consistent with a proposal to give the government claim priority over other unsecured creditors. It may well be that this would have been acceptable, if all bankrupt railroads had been treated alike. But, in view of the treatment extended the others, I do not find this arrangement acceptable now.

For the foregoing reasons, an order will be entered authorizing the Trustees to consummate the loan transaction, upon condition that the debt thereby created will rank equally with pre-bankruptcy unsecured debt.